Attorneys for Appellant

Jeffrey A. Modisett
Attorney General of Indiana

Greg Ullrich
Deputy Attorney General
Indianapolis, IN

Attorney for Appellee

Robert G. Forbes
Forcum & Forbes LLP
Hartford City, IN

 IN THE
 INDIANA SUPREME COURT

STATE OF INDIANA,
Appellant (Plaintiff below),

 v.

JOHN LOMBARDO,
Appellee (Defendant below).

)
) Supreme Court No.
) 38S00-9902-CR-111
)
)
)
)
)
)

 APPEAL FROM THE JAY CIRCUIT COURT
 The Honorable Kenneth Sullivan, Special Judge
 Cause No. 38C01-9707-CF-25

 ON DIRECT APPEAL

 November 3, 2000

SULLIVAN, Justice.

 Defendant John Lombardo was charged with the unlawful interception of
a telephonic communication for secretly tape recording his estranged wife’s
telephone conversations. The trial court dismissed the charge, finding the
Indiana Wiretap Act was unconstitutionally vague because it did not clearly
define the conduct prohibited. We hold that Indiana’s Wiretap Act is
constitutional and that there is no constitutional bar to its application
in this case.

 Background

 Both federal and state statutes prohibit the use of wiretapping and
electronic surveillance except in certain circumstances. See 18 U.S.C. §§
2511-2519 (1988) (“Federal Wiretap Act”); Ind. Code §§ 35-33.5-1-1 through
35-33.5-5-6 (1993) (“Indiana Wiretap Act.”). This case arises under the
Indiana Wiretap Act but requires reference to the Federal Wiretap Act as
well.[1]

 On January 16, 1998, the State filed an amended information charging
John Lombardo with the unlawful interception of a telephonic communication,
a class C felony, under Indiana Code § 35-33.5-5-5. The State alleged
that between October, 1996, and March, 1997, Lombardo had placed a
recording device at the home of his estranged wife, Connie, to intercept
and record telephone conversations between her and a third person without
the consent of either party. Connie apparently had found a hidden tape
recorder wired to the telephones in the home and also heard Lombardo state
that he had several tapes of conversations between her and third parties.

 On March 2, 1998, Lombardo filed a motion to dismiss the amended
information, advancing several arguments but primarily claiming that the
Indiana Wiretap Act did not adequately forewarn the conduct prohibited. On
December 30, 1998, the trial court granted Lombardo’s motion to dismiss the
charge, finding the Indiana Wiretap Act unconstitutionally vague on its
face and as applied in this case. The State appeals these rulings. This
Court has exclusive jurisdiction over this case pursuant to Indiana
Appellate Rule 4(A)(8).[2]

 Discussion

 In charging Lombardo with the unlawful interception of a telephonic
communication, the State acted pursuant to these provisions of the Indiana
Wiretap Act:
 (a) This section does not apply to a person who makes an
 interception authorized under federal law.

 (b) A person who knowingly or intentionally intercepts, a
 communication in violation of this article commits unlawful
 interception, a Class C felony.

 (c) A person who, by virtue of the person’s employment or
 official capacity in the criminal justice system, knowingly or
 intentionally uses or discloses the contents of an interception in
 violation of this article commits unlawful use or disclosure of an
 interception, a Class C felony.

Ind. Code § 35-33.5-5-5 (1993) (emphases added). The statute defines the
“interception” of a wire or electronic communication as follows:

 “Interception” means the intentional:
 (1) recording of; or

 (2) acquisition of the contents of;

 a telephonic or telegraphic communication by a person other than
 a sender or receiver of that communication, without the consent of the
 sender or receiver, by means of any instrument, device, or equipment
 under this article. This term includes the intentional recording of
 communication through the use of a computer or a FAX (facsimile
 transmission) machine.

Id. § 35-33.5-1-5 (emphasis added).

 Lombardo contends, and the trial court agreed, that this statutory
scheme is unconstitutionally vague in several respects in that “a person of
ordinary intelligence is unable to determine the conduct prohibited.”
Appellee’s Br. at 3; see also Order of Dismissal at 1 (“[T]he Statute IC 35-
33.5-1-1 through IC 35-33.5-5-6 as written [is] unconstitutionally vague,
because the statute doesn’t clearly define what conduct is prohibited and
is not understandable by a person of ordinary intelligence.”) (R. at
136.)[3]

 When the validity of a statute is challenged, we begin with a
“presumption of constitutionality.” State v. Downey, 476 N.E.2d 121, 122
(Ind. 1985) (quoting Sidle v. Majors, 264 Ind. 206, 209, 341 N.E.2d 763,
766 (1976)) (upholding the constitutionality of Indiana’s dependant neglect
statute under a void for vagueness challenge), reh’g denied. The burden to
rebut this presumption is upon the challenger, and all reasonable doubts
must be resolved in favor of the statute’s constitutionality. See id.

 A statute will not be found unconstitutionally vague if individuals of
ordinary intelligence would comprehend it adequately to inform them of the
proscribed conduct. See id. The statute “need only inform the individual
of the generally proscribed conduct, [and] need not list with itemized
exactitude each item of conduct prohibited.” Id. Finally, “‘it is well
established that vagueness challenges to statutes which do not involve
First Amendment freedoms must be examined in light of the facts of the case
at hand.’” Davis v. State, 476 N.E.2d 127, 130 (Ind. Ct. App. 1985)
(quoting United States v. Mazurie, 419 U.S. 544, 550 (1975)), transfer
denied.

 I

 Lombardo first contends that the Act is impermissibly vague because
the statutory scheme under which he was charged is “contradictory as to the
degree of culpability required.” Appellee’s Br. at 4.

 We acknowledge that the Act is internally inconsistent: The highest
degree of culpability – “intentional” – is used to define an “interception”
under Indiana Code § 35-33.5-1-5, while a lesser degree of culpability –
“knowingly or intentionally” – is included in defining the statutory crime
under Indiana Code § 35-33.5-5-5. Nevertheless, “‘[w]hen a statute can be
construed to support its constitutionality, such construction must be
adopted.”’ In re Tina T., 579 N.E.2d 48, 56 (Ind. 1991) (quoting Miller v.
State, 517 N.E.2d 64, 71 (Ind. 1987)).

 Here, Lombardo does not claim that he acted with the lesser
culpability of “knowingly”;[4] instead, he broadly claims that “a person of
ordinary intelligence [cannot] be said to have been given fair notice” as
to what degree of culpability is required. Appellee’s Br. at 5. We
disagree and find that a person of ordinary intelligence would know, under
any reasonable interpretation, that the act of wiring a tape recorder under
a house to record secretly another’s conversations is an “intentional” act
clearly prohibited under the Act’s current statutory scheme.

 That being said, we accept the State’s suggestion[5] to construe
strictly the Indiana Wiretap Act in future cases to eliminate the lesser
culpability of “knowingly,” so that in charging and prosecuting individuals
under Indiana Code § 35-33.5-5-5(b), the State will henceforth be required
to prove intentional conduct. Cf. State v. McGraw, 480 N.E.2d 552, 553
(Ind. 1985) (providing that penal statutes must be strictly construed
against the State).

 II

 Lombardo next contends that the Act is unconstitutionally vague
because it “do[es] not outlaw all recordings but only those recordings
accomplished by means of certain instruments, devices or equipment which
are supposed to be, but never are, delineated except for two . . . machines
which do not apply in this instance.” Appellee’s Br. at 2.

 For ease of review, we again reproduce the statutory definition of
“interception:”
 “Interception” means the intentional:

 (1) recording of; or
 (2) acquisition of the contents of;

 a telephonic or telegraphic communication by a person other than
 a sender or receiver of that communication, without the consent of the
 sender or receiver, by means of any instrument, device, or equipment
 under this article. This term includes the intentional recording of
 communication through the use of a computer or a FAX (facsimile
 transmission) machine.

Ind. Code § 35-33.5-1-5 (1993) (emphases added).

 Lombardo claims that a literal reading of the statute allows for
someone lawfully to “intercept” a communication with a tape recorder
because the Act only prohibits recordings obtained “by means of any
instrument, device or equipment under this article,” Ind. Code 35-33.5-1-5
(emphases added), and the only two devices listed in the article are “a
computer or a FAX,” id.

 A more reasoned interpretation is that the phrase “under this article”
limits the definition of “interception” to an application under Indiana’s
Wiretap Act, as opposed to, say, an application under Title 6 of Indiana
Code on taxation where the term “interception” is used in a similar
context. See Ind. Code 6-8.1-3-2.2(c) (1990) (“As used in this section,
‘surveillance’ means the monitoring of a person, place, or event by: (1)
electronic interception; (2) overt or covert observations; (3) photography;
or (4) the use of informants.”) (emphasis added). Therefore, we adopt this
logical construction and hold that an interception under the Act can be
accomplished “by means of any instrument, device, or equipment.”

 We also find that an individual of ordinary intelligence – without the
benefit of this analysis – could easily comprehend the Act to include a
tape recorder, which is the most common device used to intercept telephonic
communications.

 III

 Lombardo lastly contends that the Act is unconstitutionally vague
because it “incorporate[s] federal law as an exception but the federal law
is so unclear on the issue of an exception for the marital residence that
it makes the state law too vague.” Appellee’s Br. at 2.

 His argument is essentially this: First, the Indiana Wiretap Act
incorporates federal wiretap law.[6] Second, federal wiretap law includes
case law and the federal circuits are split on whether the Federal Wiretap
Act outlaws intercepting the telephone communications of one’s spouse
within the marital home.[7] Third, because of the conflict among the
circuits, a person of common intelligence cannot know whether or not
intercepting the telephone communications of one’s spouse within the
marital home is authorized under federal law. This, he concludes, renders
the statute unconstitutionally vague, at least as applied to his situation.

 We reject Lombardo’s premise that the language of the Indiana Wiretap
Act on which he relies – “[t]his section does not apply to a person who
makes an interception authorized under federal law” – incorporates federal
case law interpreting the Federal Wiretap Act into the Indiana Wiretap Act.
 Instead, we find that the provision serves to provide the exemption
required by the Supremacy Clause for any wiretapping conducting by law
enforcement under the federal act that would be prohibited under the
Indiana Act.

 Some background on the two statutes makes this clear. In 1968,
Congress enacted the Federal Wiretap Act (Title III of the Omnibus Crime
Control and Safe Streets Act, 18 U.S.C. § 2510 et seq.). The Federal
Wiretap Act authorized federal and state law enforcement officers to use
wiretaps (for recording wire communications) and bugs (for recording oral
communications) in criminal investigations pursuant to a properly issued
court order administered in compliance with specific guidelines. See 18
U.S.C. §§ 2511-2519 (1988). While Congress did not preempt all state
regulatory authority in this area, see id. § 2516(2) (implicitly
authorizing states to adopt their own wiretap statutes),[8] the legislative
history underlying the Federal Wiretap Act indicates that the drafters did
intend to establish minimum privacy standards for any state statutes that
would follow, see S. Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968
U.S. Code Cong. & Admin. News 2180, 2187 (“The State statute must meet the
minimum standards reflected as a whole in the proposed chapter. The
proposed provision [§ 2516(2)] envisions that States would be free to adopt
more restrictive legislation, or no legislation at all, but not less
restrictive legislation.”).

 In 1990, the General Assembly passed the Indiana Wiretap Act (Pub. L.
No. 161, 1990 Ind. Acts 2161 (codified as amended at Ind. Code §§ 35-33.5-1-
1 through 35-33.5-5-6 (1998)), which provided for the “interception of
telephonic or telegraphic communications relevant to the investigation or
prosecution of felonies pertaining to the Indiana controlled substance
statutes,” H.B. 1093, 106th General Assembly, 2d Sess. (1990) (digest of
bill).[9]

 Unlike those states that essentially copied the language of the
Federal Wiretap Act,[10] and others that adopted the Federal Wiretap Act
language with only minor changes,[11] Indiana’s statutory scheme largely
stands on its own. But there are important similarities between Indiana’s
Wiretap Act and the Federal Wiretap Act. Both provide criminal penalties
for the unauthorized interception of a wire or electronic communication
without the consent of at least one of the participants.[12] See Ind. Code
§ 35-33.5-1-5; 18 U.S.C. § 2511(2)(d). Indiana also follows the federal
format in exempting certain entities and individuals – in addition to law
enforcement – from the imposition of criminal and civil penalties. Compare
18 U.S.C. § 2511(2) (exempting switchboard operators, communications
carrier personnel, FCC personnel, etc.), with Ind. Code § 35-33.5-1-1
(providing that the Act “does not apply to the ordinary course of business
pertaining to the operation of a telephone or telegraph corporation”); and
id. § 35-33.5-5-4 (providing journalists with an affirmative defense to
civil liability in certain situations).

 On the other hand, the Federal Wiretap Act also provided that states
were “free to adopt more restrictive legislation,” see S. Rep. No. 1097
and, in fact, that is what Indiana lawmakers appear to have done. For
example, the Indiana Wiretap Act does not appear to authorize law
enforcement to “intercept” an oral communication through the use of
eavesdropping equipment or bugs. But in adopting more restrictive
legislation, our legislature could not ignore the potential for conflict
under the Supremacy Clause[13] between Indiana’s Wiretap Act, which
criminalizes certain overly intrusive police activities,[14] and the
Federal Wiretap Act, which authorizes different types of federal
interceptions within Indiana’s borders. Viewed in this manner, the
legislature’s exemption of interceptions “authorized under federal law”
from the strictures of Indiana law amounts to no more than state wiretap
law immunization of federal law enforcement surveillance activities within
Indiana. Cf. State v. Stockfleth, 804 P.2d 471, 477-78 (Or. 1991)
(analyzing the state legislative history which identified the need to
“attempt to bring Oregon law into line with federal law in order to give
law enforcement personnel a single set of guidelines and thus to remove the
potential for a wiretap authorized in Oregon to be a violation of federal
law”).

 In holding that the Indiana Act does not incorporate by reference
federal case law on intercepting the telephone communications of one’s
spouse within the marital home, we note that we have not been asked to
express any opinion, and we do not, as to whether the wiretapping at issue
in this case occurred in the marital home or as to whether there is a
marital home exception implicit in the Indiana Wiretap Act.

 Conclusion

 In summary, we conclude that: (1) the Indiana Wiretap Act is
sufficiently clear and definite to warn a person of ordinary intelligence
that the act of intentionally wiring a hidden tape recorder to document the
private telephone conversations between a spouse and third-parties, without
their knowledge or permission, is prohibited under the Act; (2) the State
will henceforth be required to prove intentional conduct in charging and
prosecuting individuals under Indiana Code § 35-33.5-5-5(b); (3) an
interception under the Act can be accomplished “by means of any instrument,
device, or equipment”; (4) our legislature did not intend to directly
incorporate the Federal Wiretap Act statutory or case law into Indiana’s
Act but instead meant to exempt from its provisions federal law enforcement
surveillance activities within Indiana’s borders.

 The judgment of the trial court declaring the Indiana Wiretap Act
unconstitutional is reversed, and this case is remanded to the trial court
for further proceedings consistent with this opinion.

 SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.
-----------------------
 [1] This is a case of first impression in Indiana. We have not
previously construed the scope of the Indiana’s Wiretap Act. Previous
decisions from this Court and the Court of Appeals construing the Federal
Wiretap Act analyzed it prior to passage of Indiana’s Act, see In re
Marriage of Lopp, 268 Ind. 690, 378 N.E.2d 414 (1978), cert. denied, 439
U.S. 1116 (1979); Jacks v. State, 271 Ind. 611, 394 N.E.2d 166 (1979);
Wells v. Wells, 489 N.E.2d 972 (Ind. Ct. App. 1986), or construed only the
Federal Wiretap Act, see Hamed v. Pfeifer, 647 N.E.2d 669 (Ind. Ct. App.
1995).
 [2] Indiana Appellate Rule 4(A)(8) provides: “The Supreme Court shall
have exclusive jurisdiction of . . . [a]ppealable cases where a state or
federal statute has been declared unconstitutional in whole or in part.”

 [3] It is not clear from the order of dismissal (R. at 136-37) whether
the trial court found the Act to be unconstitutionally vague under the
United States Constitution, the Indiana Constitution, or both. Here,
neither party has presented a separate argument based on the Indiana
Constitution.
 [4] Indiana defines the different levels of culpability as follows:
 (a) A person engages in conduct “intentionally” if, when he
 engages in the conduct, it is his conscious objective to do so.
 (b) A person engages in conduct “knowingly” if, when he engages
 in the conduct, he is aware of a high probability that he is doing so.
 (c) A person engages in conduct “recklessly” if he engages in
 the conduct in plain, conscious, and unjustifiable disregard of harm
 that might result and the disregard involves a substantial deviation
 from acceptable standards of conduct.
 (d) Unless the statute defining the offense provides otherwise,
 if a kind of culpability is required for commission of an offense, it
 is required with respect to every material element of the prohibited
 conduct.

Ind. Code § 35-41-2-2 (1993).

 [5] See Appellant’s Reply Br. at 2 (“By eliminating the ‘knowingly’
culpability from the statute, no person of ordinary intelligence could fail
to understand the statute as applying to intentional conduct, that is,
intentional use of a recording device to intentionally intercept a
communication.”).
 [6] He draws this conclusion from the subsection of the Indiana Act
that provides, “This section does not apply to a person who makes an
interception authorized under federal law.” Ind. § 35-33.5-5-5(a)
(emphases added).

 [7] Four federal circuits have held that the Federal Wiretap Act does
not immunize interspousal wiretaps. See Heggy v. Heggy, 944 F.2d 1537,
1538 (10th Cir. 1991) (holding that the Federal Wiretap Act “does apply to
interspousal wiretapping within the marital home”), cert. denied, 503 U.S.
951 (1992)); Kempf v. Kempf, 868 F.2d 970, 973 (8th Cir. 1989) (holding
that “the conduct of a spouse in wiretapping the telephone communications
of the other spouse within the marital home, falls within [the Federal
Wiretap Act’s] purview”); Pritchard v. Pritchard, 732 F.2d 372, 374 (4th
Cir. 1984) (stating that there is no “indication in the statutory language
or in the legislative history that Congress intended to imply an exception
to facts involving interspousal wiretapping”); United States v. Jones, 542
F.2d 661, 673 (6th Cir. 1976) (holding that “the plain language of [§ 2511]
and the [the Federal Wiretap Act’s] legislative history compels
interpretation of the statute to include interspousal wiretaps”).
 Two federal circuits have held that Title III does immunize
interspousal wiretaps. See Simpson v. Simpson, 490 F.2d 803, 805 (5th Cir.
1974) (“The naked language of [the Federal Wiretap Act], by virtue of its
inclusiveness, reaches this case. However, we are of the opinion that
Congress did not intend such a far-reaching result, one extending into
areas normally left to states, those of the marital home and domestic
conflicts.”), cert. denied, 419 U.S. 897 (1974)); Anonymous v. Anonymous,
558 F.2d 677, 679 (2d Cir. 1977) (holding that the wiretap in question did
not rise to the level of criminal conduct proscribed by the Federal Wiretap
Act in that it was “a purely domestic conflict[,] a dispute between a wife
and her ex-husband over the custody of their children[, and] a matter
clearly to be handled by the state courts”).
 While the Seventh Circuit has yet to take a definitive position, it
did identify this split of authority in Scheib v. Grant, 22 F.3d 149, 153
n.2 (7th Cir.) (citing the same cases except Anonymous), cert. denied, 513
U.S. 929 (1994).

 [8] See also 18 U.S.C. § 2519(2) (requiring the principal prosecuting
attorney for any political subdivision of a state that has a statute
authorizing communications intercepts to submit to the Administrative
Office of the United States Courts all specific information on intercepted
wire, oral, or electronic communications).
 [9] Hoosier law enforcement has apparently only sparingly utilized
Indiana’s Wiretap Act since its passage in 1990. Only a handful of
interception warrant reports have been filed with the Legislative Council
pursuant to Indiana Code § 35-33.5-2-4, and the State Court Administration
pursuant to Indiana Code § 35-33.5-2-5 and Criminal Rule 25.

 [10] These states are: Florida, Hawaii, Minnesota, Nebraska, North
Dakota, Tennessee, Virginia, West Virginia, and Wisconsin. See Stacy L.
Mills, Note, He Wouldn’t Listen To Me Before, But Now . . . : Interspousal
Wiretapping and an Analysis of State Wiretapping Statutes, 37 Brandeis L.J.
415, 427-28 & n.116 (1998).

 [11] These states substitute the words “purposely,” “knowingly,” or
“willfully” for “intentionally”: Idaho, Louisiana, Missouri, New
Hampshire, New Jersey, North Carolina, Ohio, and Oklahoma. See id. at 428
& n.118.
 [12] Several states require the wiretapper to obtain the consent of
all communicating parties to avoid punishment. See Perry v. State, 741
A.2d 1162, 1197 & n.3 (Md. 1999) (Cathell, J., dissenting) (“My research
indicates that there are ten states, including Maryland, that require
consent of all parties to an intercepted telephone communication. They
include Connecticut, Delaware, Florida, Illinois, Massachusetts, Michigan,
Montana, New Hampshire and Pennsylvania. In addition, California and
Washington require such consents in civil cases.”) (citing Carol M. Bast,
What’s Bugging You? Inconsistencies and Irrationalities of the Law of
Eavesdropping, 47 DePaul L. Rev. 837 (1998)); see also Mills, supra note
10, at 429 & n.127 (listing the same states).
 [13] U.S. Const., art. VI, cl. 2.

 [14] See Ind. Code § 35-33.5-5-5(c) (“A person who, by virtue of the
person’s employment or official capacity in the criminal justice system,
knowingly or intentionally uses or discloses the contents of an
interception in violation of this article commits unlawful use or
disclosure of an interception, a Class C felony.”) (emphasis added).